[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 23, 2005
THOMAS K. KAHN
CLERK

No. 04-14247
Non-Argument Calendar
_____

D. C. Docket No. 03-01424-CV-S-M

ED L. KINNAIRD,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,
Commissioner of Social Security Administration,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 23, 2005)

Before BLACK, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

This is an appeal from the district court's affirmance of the Social Security Commissioner's ("Commissioner") denial of disability benefits under the Social Security Act.

## I. FACTUAL BACKGROUND

In 1998, claimant Ed Kinnaird, age 46, applied for disability benefits, alleging that he became disabled in 1997 as a result of his back pain, right knee pain, headaches, spastic colon, and Chronic Obstructive Pulmonary Disease[1] ("COPD"). Kinnaird's application was denied initially and on reconsideration. He subsequently requested and received a hearing before an Administrative Law Judge (ALJ) in Danville, Illinois.

At the hearing in 1998, Kinnaird testified that he traveled around 30 miles by car to attend the hearing. He confirmed that he was married, had a baby at home, and that he had obtained his GED while serving in the Navy. He claimed that despite his many doctors visits and the various medications he was currently taking to treat his medical problems,[2] he was unable to recover to the point of

---

[1]COPD is a "general term for chronic, non-reversible lung disease that is usually a combination of emphysema and chronic bronchitis." Barron's *Dictionary of Medical Terms*, 2d ed. (1989).

[2]Kinnaird's doctors prescribed: Pepcid to relieve his heartburn, Oxycontin to help manage his back and knee pain, Zoloft to relieve his depression, Amitriptyline to help alleviate his migraine pain, Hyoscyamine as an anti-spasmodic, Levsinex to treat his spastic colitis, Ambien for treatment of his insomnia, and Guaifensesin for temporary relief of his nasal congestion and drainage of his bronchial tubes.

resuming any of his previous positions as a factory worker, meat cutter, trailer repairman, or cashier.

Kinnaird described his medical problems as right knee and back pain, ulcers, spastic colon, a pinched nerve in his shoulder, migraines, and depression. He testified that he experienced pain all the time, but that the pain was worse when he was driving, sitting or standing. He stated that he had to lie down every twenty minutes and he could not walk or climb stairs. During the hearing, Kinnaird asked if he could stand to help his back, which he claimed was causing him severe pain.

Kinnaird was first diagnosed in February of 1997 as suffering from degenerative disc disease and was treated subsequently by various doctors at the Carle Clinic for this condition. Dr. Johnson, a specialist in rehabilitative medicine at the Clinic, examined Kinnaird in 1997 in relation to his work injury, knee, and back pain. Her examination revealed mild effusion of his right knee, mild tenderness in the left lower thoracic and upper lumbar paraspinals. She also noted that he walked with an antalgic gait using a cane. She saw him again in November of 1998 for a ten minute counseling session with no examination.[3]

---

[3]In a follow-up letter written to Kinnaird, Dr. Johnson summarized her November 1998 visit with him, stating that:
> You are unable to be upright for longer than 20 minutes at which time you need to lay down for 15 or 20 minutes . . . You are up and down all day and most of the night as well. You are unable to even lift your infant daughter. You are unable to walk up and down stairs and had to rearrange your house to bring your bed downstairs. You are unable to do any sort of bending or squatting. Walking is limited to 150 to 200 yards at one time at which time you need to rest.

In an April 1998 residual functioning capacity ("RFC") assessment, doctors listed Kinnaird as capable of occasionally lifting fifty pounds, frequently lifting twenty-five pounds, standing and walking six hours in an eight hour day, and sitting six hours in an eight hour day. The doctors found he could frequently climb, balance, and stoop, but had limited push-pull abilities in his lower extremities. The assessment noted that Kinnaird could not squat or hop, and that his knee pain limited his ability to kneel and crawl.

The ALJ concluded that Kinnaird was not disabled because he did not have impairments that met or equaled a listing, and the medical evidence about his RFC was not credible. The ALJ discredited the opinion of Kinnaird's treating physician because it was not supported by the medical evidence. The ALJ found that Kinnaird was capable of performing light work, with some nonexertional limitiations, but that he could not return to his past relevant work. The ALJ concluded, however, that there were other jobs available in the national economy.

Subsequently, Kinnaird requested review of the ALJ's decision, which the Appeals Council granted. The Council then vacated the hearing decision, and remanded the claim for a new hearing and decision. Although Kinnaird was now living in Alabama, he appeared and testified at a second hearing held in Illinois.[4] Kinnaird submitted additional medical evidence from Drs. Johnnie Stevens and

_____

[4]Kinnaird explained that he rode in the car with his wife who did all the driving, that she stopped frequently along the way, and that his seat was able to fully recline.

4

Carlos Ganuza. Dr. Stevens completed an RFC exam. The exam indicated that Kinnaird was limited to lifting five pounds maximum, and limited to standing and walking for four hours a day, and only for ten minutes without an interruption. The exam revealed that Kinnaird could sit eight hours, but only thirty minutes without interruption. The exam also showed that Kinnaird had limitations on reaching, pushing and pulling. At the close of the hearing, the ALJ posed a hypothetical question to a Vocational Expert ("VE") in order to assess the availability of jobs, if any, in the economy that Kinnaird would be able to perform at his functional level.

Based on the hearing testimony and medical evidence, the ALJ again found that Kinnaird was not disabled. Specifically, the ALJ discredited Dr. Johnson's assessment because he found that it was not supported by the medical evidence and was not based on a recent exam. The ALJ further discredited Dr. Steven's RFC assessment. Finally, the ALJ found that Kinnaird's subjective complaints of pain were not credible and did not preclude sedentary work such as data clerk or non-emergency dispatcher. Kinnaird requested review by the appeals council, which denied review. Kinnaird then filed his complaint in the district court. The district court affirmed the ALJ's decision without discussion. Kinnaird now appeals.

## II. DISCUSSION

In reviewing claims brought under the Social Security Act, we must affirm

the Commissioner's decision if we determine that: (1) the decision reached is supported by substantial evidence in the record; and (2) the correct legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In order to obtain disability benefits, the claimant "bears a heavy burden in establishing the existence of a disability." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). The Social Security regulations, under 20 C.F.R. § 404.1520, set forth a five-step evaluation process to determine whether a person is disabled and, thus, in need of benefits.[5] Under the five step analysis, the ALJ found that Kinnaird was not involved in substantial gainful activity. The ALJ further found that though Kinnaird had a medically severe combination of impairments, those impairments did not meet or equal a listed impairment. The ALJ adopted the VE's testimony that Kinnaird could not perform past relevant work, but found that Kinnaird could perform other types of work requiring only low levels of exertion

---

[5]At the first step, claimant will be denied benefits if it is determined that he is engaged in "substantial gainful activity." *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987). If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a "medically severe" impairment or combination of impairments. *Id.* at 140-41, 107 S.Ct. at 2291. If the impairment is determined severe, the inquiry proceeds to the third step, whether the claimant will be found automatically disabled and awarded benefits if his impairment or combination of impairments meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant could not prove that his impairments met or equaled a listed impairment at the third step, the burden remains on him to prove, in step four, that he is unable to perform his past relevant work. *Id.* at 404.1520(a)(4)(iv). If the claimant is able to show that he cannot return to his previous employment, the fifth step entails an inquiry into whether he can perform other types of work. *Id.* at 404.1520(a)(4)(v).

such as sorter, data examination clerk, and non-emergency dispatcher.

Kinnaird makes three arguments on appeal: (1) that the ALJ gave improper weight to the opinion of his treating physicians, (2) that the ALJ did not properly evaluate his subjective complaints of pain and (3) that the ALJ did not include all of his medical impairments in the hypothetical question the ALJ posed to the VE at the second hearing.

*A. Treating Physicians' Opinions*

We first consider Kinnaird's argument that the ALJ gave improper weight to the opinion of his treating physician, Dr. Johnson. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* If the ALJ fails to clearly articulate the weight given to the physician's opinion, the opinion is accepted as true as a matter of law. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

In support of his decision to reject Dr. Johnson's opinion that Kinnaird was not able to carry out any meaningful work activities, the ALJ found that Dr.

7

Johnson's opinion of Kinnaird's medical limitations[6] conflicted with the medical evidence[7] and with Kinnaird's testimony. Specifically, Dr. Johnson's letter restricted Kinnaird to remaining upright for no more than twenty minutes at a time, lifting no more than ten pounds once or twice a day, avoiding stairs, bending, or squatting, and walking only 150 to 200 yards at a time. In contrast, Kinnaird testified that he could read, watch television, and visit with friends, and that he attempted to do some household chores. Thus, we hold that the ALJ properly considered Kinnaird's own testimony, the fact that he sought no treatment for two years, and his ability to engage in daily activities in determining that there was good cause to reject Dr. Johnson's opinion. *Phillip*, 357 F.3d at 1240-41.

Next, we consider whether the ALJ gave improper weight to the opinion of Kinnaird's most recent treating physician, Dr. Stevens. In August and September of 2001, Dr. Stevens reported that Kinnaird was "physically incapable to perform [sic] any significant amount of work," because his "multifactoral chronic pain syndrome . . . ha[d] incapacitated him as to any physical work." Although Kinnaird

---

[6]*See* note 3, *supra*.

[7]According to the medical evidence, Kinnaird experienced pain in his lower back and right leg, but exhibited heel/toe gait strength of 4/5, quadriceps, hip, and hamstring strength of 5/5, normal range of motion in the upper extremities, with upper strength of 5/5. Additionally, in April 1998, doctors assessed Kinnaird as capable of occasionally lifting fifty pounds, frequently lifting twenty-five pounds, standing and walking six hours in an eight hour day, and frequently able to climb, balance, and stoop. He further had unlimited push-pull capabilities, and normal range of motion, with occasional limits on climbing, kneeling, crouching, or crawling.

did not receive treatment from 1998 to 2000, the medical evidence from the evaluations Kinnaird underwent in Alabama in 2000-2001 indicates that Kinnaird's conditions may have worsened.[8]  We conclude that the ALJ's decision to not give considerable weight to Dr. Stevens's opinion is not supported by the substantial evidence in the record.  Thus, we remand this issue for the ALJ to obtain additional medical evidence to determine whether Kinnaird's limitations and restrictions became more severe in 2000-2001.

*B. Other Issues on Appeal*

In addition to Kinnaird's arguments concerning the weight given to his physicians's opinions, Kinnaird contends that (1) the ALJ did not properly evaluate his subjective complaints of pain and (2) the ALJ did not include all of his medical impairments in the hypothetical question the ALJ posed to the VE at the second hearing.   We decline to address these issues and direct the ALJ on remand to consider the additional medical evidence from Dr. Stevens's evaluations and reevaluate the pain standard in accordance with that evidence.  Furthermore, because we hold that the ALJ improperly discredited Dr. Stevens's opinion, on remand we direct the ALJ to pose another hypothetical question to the VE, making sure to include all of Kinnaird's impairments.

---

[8]Dr. Steven's evaluations of Kinnaird show increased pain and physical limitations compared with the 1997 to 1998 evaluations.

III. CONCLUSION

For all the above reasons, we vacate the district court's order affirming the denial of disability insurance benefits to Kinnaird and remand this case to the Commissioner to reconsider the evidence in accordance with this opinion.

VACATED and REMANDED.